UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>CRISPIN AVALOS-SEÑOR,<br><br>                      Defendant. | Case No.: 16-cr-02189-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Crispin Avalos-Villaseñor ("Avalos-Villaseñor") filed a *pro se* motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 78 ("Motion"). The Government opposed. ECF No. 83 ("Opp."). For the reasons that follow, Avalos-Villaseñor's motion is **DENIED**.

I.  **BACKGROUND**

Avalos-Villaseñor was convicted by guilty plea of one count of Manufacture of Marijuana, 21 U.S.C. 841(a)(1). This Court sentenced him to 92 months of imprisonment, followed by five years of supervised release. ECF No. 72. Avalos-Villaseñor has served approximately 57 months of that sentence, not including any good time credits. Opp. at 2. He is currently incarcerated at Victorville Medium I and is scheduled to be released on April 24, 2023. *Id.*

Avalos-Villaseñor is 40 years old. ECF No. 57 (Presentence Investigation Report or "PSR") at 2. At the time of the PSR, Avalos-Villaseñor stated he was in "poor health" and that he was on medication for high cholesterol, which was diagnosed in 2012. *Id.* at 10. He was diagnosed with thyroid cancer in 2011. *Id.* Avalos-Villaseñor was also prescribed blood pressure medication in 2010. *Id.* Avalos-Villaseñor previously contracted COVID-19 while in custody and states that he suffered hallucinations, vomiting, and bowel problems while ill. Motion at 22. After recovering from COVID-19, Avalos-Villaseñor continues to experience memory loss, chest pains, depression, and insomnia. *Id.* He has high cholesterol and thyroid problems and is on medication for these conditions, although "during FCI lockdowns and isolation," this medication is "rarely given." *Id.* In April 2021, Avalos-Villaseñor was offered the Pfizer COVID-19 vaccine and declined it. Opp. Exhibit A.

## II.   DISCUSSION

Avalos-Villaseñor now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> 	(i) extraordinary and compelling reasons warrant such a reduction; or
> 	(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, there are two questions before the Court: first, whether Avalos-Villaseñor has satisfied the administrative exhaustion requirement, and second, whether Avalos-Villaseñor has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies or 30 days have lapsed from the receipt of such a request by the warden, whichever is earlier.

On January 14, 2020, Avalos-Villaseñor made a written request through a BOP staff member to Warden Jusino, asking the warden to file a compassionate relief request on his behalf. Motion at 18; Motion Exhibit A. Avalos-Villaseñor further notes that though he "has yet to formally request compassionate release through the Bureau of Prisons," various courts have waived the administrative exhaustion requirement in light of the COVID-19 pandemic. *Id.* The Government argues in opposition that Avalos-Villaseñor has not exhausted his administrative remedies, and that administrative exhaustion requirements are mandatory claim-processing rules. Opp. at 9.

Section 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked. *United States v. Keller*, 2 F. 4th 1278, 1282 (9th Cir. 2021). This Court therefore cannot waive statutorily imposed administrative exhaustion requirements. However, the Court finds that, leaving the issue of waiver aside, Avalos-Villaseñor has in fact properly exhausted his administrative remedies. Avalos-Villaseñor identifies the COVID-19 pandemic's dangers as the basis for his request. Motion Exhibit A. While this basis is not highly detailed, the Court finds that it sufficiently provides "at least some explanation" to support his request. *Escobar*, 2021 WL 364163 at *1. In addition, far more than 30 days have elapsed since Avalos-Villaseñor's written request to the warden on January 14, 2021. The Court therefore proceeds to the merits of his action.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. Section 1B1.13 explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed

by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Court therefore may consider Section 1B1.13 in its exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons. *Id.* at 801–02.

      Avalos-Villaseñor submits that he is at risk of contracting COVID-19 a second time and suffering severe illness should he remain incarcerated, and that this risk, exacerbated by his thyroid problems and high cholesterol, qualifies as an "extraordinary and compelling circumstance[]" justifying his release. Motion at 14, 20. Avalos-Villaseñor also cites "the current COVID-19 outbreak in the prison where [he] is confined." *Id.* at 14. He further argues that "the risks associated with the spread of COVID-19 are thought to be far greater in prison settings where personal distancing is impossible and the conditions are generally unsanitary." *Id.* at 16.

      The Court recognizes that the COVID-19 pandemic has been, and continues to be, a global health crisis of unprecedented severity and scale. However, the Court cannot grant compassionate release on the basis of a general assertion of pandemic danger alone. *See United States v. Fuentes,* No. 2:07-CR-0248-11, 2020 WL 1937398 at *3 (E.D. Cal. April 22, 2020) (noting that the generalized risk of contracting COVID-19 applies to all inmates in confinement), *aff'd,* 834 Fed. Appx. 414 (9th Cir. 2021) (mem.). Instead, the Court exercises its discretion and looks to the specific "extraordinary and compelling" circumstances of the individual inmate, bearing the pandemic context in mind. *Id.* The Court addresses Avalos-Villaseñor's underlying risk factors in turn, recognizing that the conditions that contribute to an increased risk of contracting severe illness from COVID-19 are subject to ever-evolving study as the pandemic continues to unfold.

      Although the Court is not bound by Section 1B1.13 of the Sentencing Guidelines, the Court is guided by its statement that the relevant inquiry looks to the defendant's ability to "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13. Vaccination against COVID-19 is an important, even determinative, aspect of

such self-care in the pandemic. BOP has made the Pfizer vaccine available to Avalos-Villaseñor. Opp. Exhibit A. Vaccines, including the Pfizer vaccine, significantly mitigate the risk of contracting COVID-19. *See, e.g., United States v. Grummer*, No. 08-CR-4402-DMS, --- F.Supp.3d ----, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Rocha*, No. 18-CR-04180-BAS-1, 2021 WL 134150, at *3 (S.D. Cal. Jan. 14, 2021) (stating an "extraordinary and compelling" circumstance does not exist given that defendant "is likely to get a vaccine soon").  A recent study showed that Pfizer-BioNtech and Moderna vaccines reduced the risk of severe illness of Covid-19 by 94% for those who were vaccinated. *Largest CDC Covid-19 Vaccine Effectiveness Study in Health Workers Shows mRNA Vaccines 94% Effective*, CDC, https://www.cdc.gov/media/releases/2021/p0514-covid-19-vaccine-effectiveness.html (May 14, 2021).  The evidence indicates that these vaccines continue to provide strong protection against newly circulating variants. *About Variants of the Virus that Causes COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (June 28, 2021) ("So far, studies suggest that the current authorized vaccines work on the circulating variants.").  Though it is Avalos-Villaseñor's choice whether to receive the vaccine, this Court would be remiss in granting compassionate release due to COVID-19 risks when Avalos-Villaseñor has refused the most effective tool at his disposal for mitigating such risks. *See United States v. Lohmeier*, No. 12-1005, 2021 WL 365773 (N.D. Ill. Feb. 3, 2021, at *2 ("[Defendant] cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence with a sentence reduction."); *United States v. Williams*, No. 17-01279, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) ("Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus."); *United States v. Gonzalez Zambrano*, No. 18-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021)

("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release.")

Vaccine availability and current science surrounding reinfection undermine Avalos-Villaseñor's argument that, because he has already contracted COVID-19, he is at increased risk of severe disease and illness from reinfection within prison conditions. The CDC reports that "[c]ases of reinfection have been reported, but remain rare." CDC, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020). In fact, previous infection has been seen to provide some natural antibodies against reinfection, though studies suggest that unvaccinated people who have been infected should still receive the COVID-19 vaccine to further reduce their risk of reinfection. CDC, *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination---Kentucky, May-June 2021*, https://www.cdc.gov/mmwr/volumes/7-/wr/mm7032e1.htm (published August 06, 2021). The Pfizer vaccine available to Avalos-Villaseñor will reduce his risk of severe illness and death from reinfection and reduce the risk of community spread within his correctional facility.

Avalos-Villaseñor cites a current COVID-19 outbreak at his facility and the impossibility of maintaining social distancing in a prison setting as circumstances justifying his release. Motion at 4. While the Court is aware that testing frequency may lead to undercounting the number of positive COVID-19 cases in an institutional setting, and that numbers of reported cases may not be completely accurate, the Court does not have a basis for finding that FCI Victorville Medium I is in a state of emergency due to a COVID-19 outbreak. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited August 11, 2021) (showing zero active COVID-19 cases as of August 10, 2021). As for the challenges of maintaining social distancing in a prison setting, the Court recognizes this difficulty. Avalos-

Villaseñor has a strong measure of protection available to him: the vaccine. If and until circumstances change, the vaccine provides him with an answer to the heightened risks of a prison setting.

As to Avalos-Villaseñor's unspecified thyroid conditions, the CDC does not currently list thyroid disorders as a high-risk factor for severe COVID-19 symptoms or complications. *See* Center for Disease Control and Prevention ("CDC"), *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). Additionally, the American Association of Clinical Endocrinology ("AACE") states that "there is currently no reason to believe that most people with thyroid disease are at increased risk to contract this novel coronavirus or to experience complications." AACE, *AACE Position Statement: Coronavirus (COVID-19) and People with Thyroid Disease*, https://pro.aace.com/recent-news-and-updates/aace-position-statement-coronavirus-covid-19-and-people-thyroid-disease (published April 15, 2020). Furthermore, "the majority of individuals with thyroid cancer are likely not more susceptible to COVID-19." *Id.* The CDC also does not list high cholesterol as a heightened risk factor for severe illness or death from COVID-19. *See* CDC, *supra*. The Court recognizes that the scientific consensus may change in the future, but based on the limited details provided by Avalos-Villaseñor, this Court cannot currently find that his thyroid problems or high cholesterol heighten his risk of severe COVID-19 complications and reinfection to a point that justifies granting compassionate release. *See United States v. Thompson,* 984 F.3d 431 (5th Cir. 2021) (finding that cholesterol and other chronic conditions which are manageable through medication do not make defendant's circumstances extraordinary and compelling); *United States v. Polley*, 2020 WL 3574373 at *2 (E.D. Penn. June 30, 2020), *appeal docketed,* No. 20-2644 (3d Cir. Aug. 14, 2020) (declining to conclude that inmate's thyroid condition places him at higher risk for serious illness or death from

COVID-19). Should circumstances change, Avalos-Villaseñor is free to file another motion for compassionate release.

Accordingly, the Court finds that Defendant Avalos-Villaseñor has not presented the sort of extraordinary and compelling reasons that enable the Court to grant him compassionate release under Section 3582. The Court does not proceed to a consideration of whether the § 3553(a) sentencing factors weigh in favor of his release because Avalos-Villaseñor has not made this threshold showing.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 11, 2021

Hon. Gonzalo P. Curiel
United States District Judge